UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

David Kirkpatrick, : Case No. 1:09-cv-356
:
    Plaintiff, :
:
vs. :
:
Ingram Barge Company, :
:
    Defendant. :

**ORDER**

Before the Court in this Jones Act case is Defendant's motion for summary judgment. (Doc. 23)  Plaintiff opposes the motion (Doc. 25), and Defendant has filed its reply. (Doc. 28)  For the following reasons, the Court will grant Defendant's motion.

**FACTUAL BACKGROUND**

Plaintiff David Kirkpatrick worked as a deck hand for Ingram Barge Company.  In August 2006, he was working on one of Ingram's motor vessels.  He awoke early from a sleep/rest break, sometime around 7 a.m. on August 27, to find that he "couldn't move at that point in time." (Kirkpatrick Deposition at 30, 32.)  He experienced severe back pain that traveled down his leg.  He was ordered to rest until the next day when he was taken to an emergency room in Ashland, Kentucky.  He visited his own chiropractor, Dr. Kyle Gantz, on August 30, 2006, reporting that low back and left leg pain had been bothering him for the past

-1-

five days.  He told Gantz that he had picked something up at work and felt some tightness in his back later on that evening.  Upon rising the next morning, he had pain in his low back and down his left leg.  An MRI performed on September 18 revealed an extruding disc displacement/disc herniation at L5-S1, and herniation at L4-5.  (Doc. 25, Exhibit 18, records of Dr. Gantz.)

Kirkpatrick told an Ingram representative at the time that he did not know what caused his back and leg pain.  At his deposition in this case, he testified that he concealed what he thought the cause of his pain was because he was afraid of losing his job.  Kirkpatrick remained off work until December 2006, when he returned for two weeks of light duty.  He was then restored to full duty status in January 2007.  Ingram paid Kirkpatrick $350 per week in maintenance payments while he was off work.  After his return, he received two promotions and remained with Ingram until sometime in 2008 or 2009.

Kirkpatrick filed his complaint on May 20, 2009, alleging that Ingram's negligence caused his injury, and that the vessel was unseaworthy.  Kirkpatrick testified in his deposition that on August 27, the day before he was taken to the hospital, he and his crew mates were chipping paint from an engine exhaust stack, using a "whirlwind" (a DeWalt brand angle grinder with a "whirlwind" head attachment).  Kirkpatrick had used this tool before to chip paint from bulkheads on the boat, but they were

not as tall as the exhaust stacks, which were approximately twelve feet tall. When Kirkpatrick and his mates had finished chipping the areas they could reach by standing on the deck, they used an eight-foot folding step ladder to reach the higher parts.

Ingram has a "three-point" contact safety rule on the boat, which Kirkpatrick described as requiring workers to maintain contact with three physical points while working in such situations. In other words, in a situation using a ladder, two feet and one hand must maintain contact with the ladder. Kirkpatrick used the whirlwind by holding it in one hand against the stack surface to chip the paint. He would chip one area, then shift the whirlwind to his other arm to do another area on the other side. He would then move the ladder and do the same thing in the next location, and continue to reposition the ladder to reach other areas. Kirkpatrick said he took frequent breaks because it was August and rather hot.

Kirkpatrick noticed some stiffness in his back during the chipping, but he completed his shift and took his rest break after taking some Tylenol. He worked his next shift (a midnight shift), during which he testified that he and the crew "dropped" some barges, moved some rigging, and did some cleaning. He stated that during this shift, "most of the night we were lounging around." (Kirkpatrick Deposition at 31.) He took more Tylenol before that midnight shift. He went to bed about 6 a.m.,

and woke about an hour later with extreme pain in his back and down his leg.

Kirkpatrick testified in his deposition that his back injury was caused by ". . . hanging off the ladder and the awkwardness of holding [the whirlwind]" over his head with just one hand, due to complying with Ingram's three-point contact safety rule. He and his coworkers thought about "trying to set up something, like a plank to walk on. But then we thought at the same time, that goes back to the three points contact at all times, and if you're on a plank, you can't have three points contact. So it was hold onto the ladder and hang off of it, because that was the only other way that we could see to do it." (Kirkpatrick Deposition at 48-49.) He believes that Ingram should have provided different equipment for this job, ". . . something to where we wouldn't to have been leaning over [sic], like some sort of walk plank to hang over the side, something we could have used both hands on instead of having to [keep] both feet and a hand on the ladder." (Id. at 70) He admitted that he could not fathom how to use a walk plank to do the job. He also mentioned using some sort of boom or suspension system. (Id. at 99-100) Kirkpatrick had no other criticisms of the vessel. His testimony is clear that the equipment he was using (the whirlwind and the ladder) were not defective in any way, and that he had received training from Ingram about proper lifting and pulling techniques to avoid

back injuries.

Ingram argues that Kirkpatrick has not raised a genuine dispute as to Ingram's alleged negligence, and that Kirkpatrick's own testimony precludes any claim for unseaworthiness aboard the vessel.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253 (1968)). The burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

When considering a motion for summary judgment in a claim arising under the Jones Act, the Court must be " . . . mindful of the policy of providing expansive remedies for seamen who are injured while acting in the course of their employment and recognize that the submission of Jones Act claims to a jury requires a very low evidentiary threshold. ... Plaintiff must offer more than a scintilla of evidence in order to create a jury question on the issue ... but not much more." Churchwell v. Bluegrass Marine, Inc., 444 F.3d 898, 903 (6th Cir. 2006) (internal citations and quotations omitted).

"Under the FELA and the Jones Act, an employer has a duty to provide a safe workplace for its employees. To recover for injuries caused by the alleged negligence of an employer under the Jones Act, a plaintiff must show that her employer failed to provide a safe workplace by neglecting to cure or eliminate obvious dangers of which the employer or its agents knew or should have known and that such failure caused the plaintiff's injuries and damages." Rannals v. Diamond Jo Casino, 265 F.3d 442, 449 (6th Cir. 2001) (internal citations and quotations omitted).

Here, Kirkpatrick has failed to satisfy the low evidentiary threshold required to proceed on his claim.  It is well settled that seamen such as Kirkpatrick are "emphatically the wards of the admiralty [.]"  Chandris, Inc. v. Latsis, 515 U.S. 347, 354-55 (1995) (internal citations and quotations omitted).  But the shipowner is not an insurer of a seaman's safety, and is not absolutely liable for any and every injury that may occur on board a vessel.  A plaintiff must establish that the shipowner failed to adhere to the "ordinary prudence" standard applicable to negligence cases generally.  See Perkins v. American Elec. Power Fuel Supply, 246 F.3d 593, 598 (6th Cir. 2001).  Therefore, Kirkpatrick must demonstrate that Ingram breached its duty to protect him from the foreseeable risks of harm arising from his duties on the vessel.  Id. at 599.

Kirkpatrick does not allege that any of the equipment he was actually provided was defective.  He admitted that he was adequately trained to use the equipment, and that the crew was large enough to safely perform the job.  No one ordered him to perform the task using the whirlwind after he requested an alternative method or tool.  While not dispositive of the issue, Kirkpatrick freely admitted that he and his coworkers could not think of another way to chip the paint from the stacks, and used the same procedure that his fellow employees used on prior shifts.  There is absolutely no evidence in the record that

anyone had been injured in any way from performing this work in this manner, or that Ingram was on notice that the method of chipping paint posed a risk of harm to Kirkpatrick.

Kirkpatrick filed with his opposition brief a number of unauthenticated exhibits. Some generally discuss back injuries and preventive techniques; others are scattered excerpts of various Ingram safety manuals or rules, as well as some OSHA and industry publications. None of these exhibits are properly authenticated, and are therefore not admissible for purposes of considering Ingram's Rule 56 motion. Even if these various excerpts of documents were properly authenticated, they largely and generally address back sprains/strains and prevention techniques. For instance, an excerpt from a "Deckhand Manual" instructs that back "sprains and strains occur when you bend the spine too far in any direction or bend repeatedly, or put too much load on the spine in a bent position." (Doc. 25 at p. 5) Avoiding this sort of bending would not be impossible or impractical while using a stepladder, and Kirkpatrick does not explain why standing on the ladder and holding the whirlwind would necessarily contribute to a sprain or strain in this fashion.

More critically, however, Kirkpatrick has no evidence of an alternative method that would have been safer, and that would have prevented his injury. He testified that "something else"

-8-

would have been better, but that is clearly a hindsight observation. He mentioned a plank or some sort of scaffold, or a harness-type device. But he proffers no evidence or testimony from anyone that these alternatives actually existed, would have been feasible, and would have been safer than the manner in which he actually performed the task such that his injury would not have occurred.

In addition, Kirkpatrick has not proffered any expert opinion or testimony on the feasibility of a safer alternative. This issue is not something within the range of normal, everyday experience, such that expert testimony would not be required. See, e.g., Churchwell v. Bluegrass Marine, 444 F.3d 898 (6th Cir. 2006), where the plaintiff (a cook in the vessel's kitchen) had been told to pour used cooking grease into a coffee can, which lacked handles. The kitchen floor lacked commonly available grease mats (rubber mats with holes that permit the grease to fall through). She picked up the greasy coffee can, which slipped out of her hand, hit the counter and spilled on the floor. She took a step back and slipped on the grease. Her expert's opinion had been excluded by the district court after plaintiff failed to respond to defendant's motion in limine, and the Sixth Circuit concluded that plaintiff had failed to preserve the exclusion order for appellate review. Despite the lack of expert testimony, however, the court found that plaintiff had

raised a jury question as to whether the shipowner's failure to provide either or both of commonly available alternatives - a grease mat and a grease can with handles attached - was actionable negligence. It found that the issues "... fall squarely within the type of knowledge that most persons obtain through everyday life experiences." Id. at 905.

Here, in contrast, there is no obvious or commonly available alternative established or even suggested by the evidence in the record. All that Kirkpatrick offers is his own assertion that Ingram should have provided "something else" for him. Whether "something else" would have posed greater safety risks is a matter of speculation. Kirkpatrick's testimony is insufficient to overcome Ingram's motion.

Kirkpatrick's reliance on Dr. Mavian's testimony is also misplaced. He suggests that Mavian opined that some "work-induced awkward posture" caused his injury. (Plaintiff's Opposition Memorandum at 11.) Dr. Mavian was asked in his deposition whether "heavy lifting" could cause or contribute to Kirkpatrick's disc herniation, to which he responded that it would. Dr. Mavian said that Kirkpatrick had not provided him with any specific information about any particular movement or task that Kirkpatrick had done that might have contributed to his injury. (Mavian Deposition at 58-59.) Dr. Mavian also had no documentation concerning any complaints or even any observations

that Kirkpatrick had relayed to him about the condition of the vessel or about any equipment he had been using.  Dr. Mavian did not testify that Kirkpatrick's "awkward posture" caused or contributed to Kirkpatrick's disc herniation.

After considering all the admissible evidence in the record, the Court concludes that Kirkpatrick has not established a genuine dispute of fact as to whether Ingram was negligent concerning the method Kirkpatrick used to chip paint from the exhaust stacks.  As noted above, the evidentiary burden on Kirkpatrick is not onerous.  But the record in this case does not permit a conclusion that the question of Ingram's negligence must be submitted to the trier of fact.

Unseaworthiness Claim

Kirkpatrick also contends that the vessel was unseaworthy, a condition that proximately caused his back injury.  While the issue of unseaworthiness is generally a question of fact, Kirkpatrick must establish some facts demonstrating that the vessel was in an unseaworthy condition.  A vessel can be unseaworthy if its gear is defective, or it is missing gear that is necessary or essential to performing the task, or because the crew was ordered by a superior to use unsafe work methods.  See Churchwell v. Bluegrass Marine, 444 F.3d at 904 (internal citations omitted).

None of these conditions are established here.  Kirkpatrick

admitted that the gear he was provided was not defective.  While he contends that "something else" should have been provided, he does not identify what the alleged alternatives would be, whether or not they existed and were feasible, or why they would be necessary or essential.  There is no evidence that anyone ordered Kirkpatrick to use the "whirlwind" or that Ingram had any notice or knowledge that using the whirlwind was dangerous or unsafe.

Maintenance and Cure

Finally, Kirkpatrick contends that Ingram has breached its duties of maintenance and cure.  Kirkpatrick testified that Ingram paid all of his medical expenses arising from his injury.  He does not dispute that he received maintenance payments of $350 per week from the time he was injured until he returned to work at Ingram.  Ingram has submitted an affidavit from Patricia Hyer attesting to all of these payments.  Kirkpatrick offers no evidence that there are any outstanding medical bills that Ingram has not paid, nor suggests any basis upon which to conclude that the maintenance payments were legally insufficient.

In his opposition memorandum, Kirkpatrick argues that he might need back surgery at some future, undefined point and therefore Ingram has not completely satisfied its duties to him.  This argument is not supported by law.  The shipowner must pay maintenance for the period in which a seaman is unable to work, until he reaches maximum medical recovery.  Kirkpatrick returned

to full duty status with Ingram in January 2007.  He testified he was able to perform all of his prior duties, although promotions resulted in some ability to avoid some of the tasks required of deckhands.  He has not sought or received any treatment for his back since returning to work.  At the current time, there is no treatment that he wishes to pursue that might improve his condition.  To accept Kirkpatrick's argument would extend Ingram's cure duties indefinitely.  This is contrary to the principle that maximum medical recovery is achieved when a worker returns to full time duty, and there is no identified treatment that will improve his physical condition.  See, e.g., Pelotto v. L & N Towing Co., 604 F.2d 396, 400-401 (5th Cir. 1979) (internal citation omitted), noting that the duty to pay cure continues until the point of "maximum cure."  That point is reached when it is probable that further treatment will not improve the condition.  Kirkpatrick testified that since his return to work in January 2007, he has not sought or received treatment for his back condition.  That fact, combined with his return to full work duties, precludes any additional claim for cure at this point.

An entitlement to cure may of course include future expenses, if there is admissible evidence presented of treatment to be received that will improve the condition.  However, any such award must be for the immediate future, and for a period which can be definitely ascertained.  See, e.g., Calo v. Ocean

<u>Ships</u>, 57 F.3d 159, 162-163 (2nd Cir. 1995), vacating a cure award based upon the speculative possibility that plaintiff might have back surgery in the future.  Kirkpatrick's testimony that he might experience a disc herniation at some point in his life, or might need future back surgery, is an insufficient basis upon which to deny Ingram's motion for summary judgment on the issue of cure.

## CONCLUSION

For all of the foregoing reasons, the Court grants Defendant's motion for summary judgment.  (Doc. 23)  Plaintiff's complaint is dismissed with prejudice.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: October 20, 2010  <u>s/Sandra S. Beckwith</u>
Sandra S. Beckwith
Senior United States District Judge

-14-